UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIE S. ALVAREZ,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | Case No. 5:17-cv-00946-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

On March 5, 2013, claimant Charles Martin Alvarez ("Claimant") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability commencing January 21, 2013. Administrative Record ("AR") 178-81, 182-88. On November 17, 2015, an Administrative Law Judge ("ALJ") conducted a hearing at which Claimant, who was represented by counsel, appeared and testified, along with a vocational expert ("VE"). AR 34-59.

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

1

Claimant passed away in December 2015.  AR 5.

On January 15, 2016, the ALJ issued a decision denying Claimant's applications.  AR 14-33.  The ALJ found that Claimant suffered from medically determinable severe impairments consisting of cardiomyopathy with congestive heart failure, hypertensive cardiovascular disease, tachyarrhythmia with a pacemaker, diverticulitis with a history of abscess formation and subsequent colostomy which was removed, degenerative disc disease of the lumbar spine with sciatica of the left leg, and obesity.  AR 19.  Despite these impairments, the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform a limited range of light work, as follows:

> [T]he claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally[2]; he could sit for six hours out of an eight-hour workday with the ability to stand and stretch during normal breaks and lunch[3]; he could stand and/or walk for four hours out of an eight-hour workday with the use of a cane for prolonged walking for over thirty minutes at a time; he is not to climb ladders, ropes or scaffolds; and he is to avoid all exposure to work hazards such as unprotected heights and operating fast or dangerous machinery.

AR 20, citing 20 C.F.R. §§ 404.1567, 416.967 (defining "light" work); Social Security Ruling ("SSR") 83-10 (the full range of "light" work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday).

Based on this RFC and the VE's testimony, the ALJ determined that

---

[2] Claimant testified he could lift 25 pounds.  AR 53.  In an earlier Function Report, he estimated he could lift 10-15 pounds.  AR 252, 256.

[3] Claimant indicated that his health conditions did not affect his ability to sit. AR 252.  He testified that he could sit for 1 or 1½ hours without a break, but he did not state the length of break needed before he could resume sitting.  AR 53.

Claimant could perform his past relevant work as a retail cashier as that work is described in the Dictionary of Occupational Titles ("DOT") code 290.477-014. AR 26. The ALJ therefore concluded that Claimant was not disabled. Id.

Plaintiff Elvie S. Alvarez ("Plaintiff"), Claimant's wife, filed this appeal as the heir and representative of Claimant's estate. (Dkt. 1.)

## III.

## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

# IV.
# ISSUE PRESENTED

Plaintiff's appeal presents the sole issue of whether the ALJ properly evaluated Claimant's subjective symptom testimony. (Dkt. 22, Joint Stipulation ["JS"] at 4.)

# V.
# DISCUSSION

**A.** **Rules Governing the Evaluation of Subjective Symptom Testimony.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

If the ALJ finds that testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In doing so, the ALJ may consider testimony from physicians "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Id. at 959. If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably

produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).

Here, the ALJ issued her decision in January 2016. At that time, SSR 96-7p had not been superseded by SSR 16-3p (which superseded SSR 96-7p on March 28, 2016). The Court notes that the SSR changes appear immaterial to the ALJ's analysis in this case. Both SSRs note that, in assessing a claimant's subjective symptom testimony, ALJs should consider, in addition to the objective medical evidence: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Compare SSR 96-7p, 1996 WL 374186, and SSR 16-3p, 2017 WL 5180304; see also 20 CFR § 404.1529 (effective to March 26, 2017, reflecting same factors); see also Clowser v. Berryhill, No. 16-2044, 2017 WL 5905506, at *3 (C.D. Cal. Nov. 30, 2017) ("When, as here, the ALJ's decision is the final decision of the

5

Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision.").

B. **The ALJ's Evaluation of Claimant's Testimony.**

Claimant worked for ten years as a retail cashier at a convenience store. AR 45. He stopped working in January 2013 when he had a pacemaker installed. AR 46, 619, 725, 1042.[4] He also underwent gastrointestinal surgery in April 2013. AR 467. In October and December 2013, Claimant's cardiologist, Dr. Patel, cleared Claimant to return to work. AR 771, 774.

In December 2013, Claimant tried to return to his cashier job, but he testified, "my job was given to somebody else, because I took the wrong disability." AR 46. He received state disability payments from January 2013 through December 2013, and after that he received state unemployment benefits for six months. AR 47.

Claimant testified that the "biggest" reasons he was unable to work were short-term memory problems and fatigue. AR 44, 54. Regarding memory, he testified that he could not work "because my memory is not what it used to be. I keep forgetting things very quickly. I guess I got short term memory lapse. And it's hard for me to stay focused for a long period of time." AR 44. In his Function Report, he reported that he needed reminders to take his medication. AR 249. He was, however, able to read, pay bills, count change, handle a savings account, and use a checkbook. AR 250-51. He estimated that he could pay attention for 1 to 1½ hours at a time, and that he could follow instructions and finish tasks he started. AR 252. He did not have "any difficulty sustaining" activities such as reading or watching television. AR 258.

Claimant testified that he did not know why he was having memory

---

[4] The cited records are "patient history" reports noting that Claimant told consultative doctors that he had a pacemaker installed in January 2013. The JS does not cite to any records directly reflecting this procedure.

6

problems; he had them since before "the [April 2013] surgery," but the problems had worsened since then. AR 44. He speculated that his post-surgery pain medication might be the cause. Id.

Regarding fatigue, Claimant testified that as a symptom of his heart problems, he "gets tired very quickly." AR 42. Claimant completed an Exertion Questionnaire and a Fatigue Questionnaire. AR 227, 258. He reported that his excessive fatigue began in about November 2011, i.e., while he was still working and before his alleged disability onset date in January 2013. AR 258-59. At the hearing, he testified, "If I can take my time, there's nothing that I need help with. … [A]s long as I'm allowed to go to [sic] my own pace, I could probably do everything that needs to be done." AR 54. He also reported, however, that he needs "a nap at least once per day." AR 259; see also AR 230 (reporting naps "twice daily for about 1½ hours").

The ALJ found that while Claimant's medically determinable impairments could reasonably be expected to cause "the alleged symptoms," Claimant's statements "concerning that intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 22. The ALJ gave four reasons for this finding: (1) lack of supporting medical evidence, (2) Claimant's receipt of unemployment benefits, (3) Claimant's "somewhat normal level of daily activity," and (4) Claimant's "routine, conservative" treatment. AR 21-22.

Regarding reason (4), Defendant concedes that Claimant's treatment was not conservative, but argues that this was harmless error due to the ALJ's other clear and convincing reasons for discounting Claimant's testimony. (JS at 19.) This Court, therefore, will consider the legal sufficiency of the ALJ's other reasons.

**1. <u>Reason One</u>: Lack of Supporting Medical Evidence.**

ALJs may consider the lack of supporting medical evidence in evaluating pain testimony, but the "lack of medical evidence cannot form the sole basis for

discounting subjective symptom testimony." Burch, 400 F.3d at 681. Here, the ALJ found that the "credibility of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective medical evidence of record." AR 21. The ALJ then summarized the medical evidence. AR 21-26.

Concerning Claimant's allegation of short-term memory impairment, the ALJ discussed the only medical evidence addressing Claimant's mental health: a psychiatric evaluation by consultative psychiatrist Dr. Rathana-Nakintara.[5] AR 25, citing AR 719-23. In February 2014, Claimant did not complain to her about "any particular mental symptoms," and she did not diagnose him as suffering from any mental impairment. AR 719-22. Dr. Rathana-Nakintara observed that Claimant had "fluent" and "normal" speech, could remember "3 out of 3 items in five minutes," did serial subtraction well, and could spell "world" forward and backward in one try. AR 721. He remembered the last three presidents and the capital of California. Id. Claimant told her that he managed his own money. Id. He also told her that in 2010, he went to jail for three days for welfare fraud. AR 722. Dr. Rathana-Nakintara opined that Claimant had no mental health-related limitations on employment. Id. Thus, substantial evidence supports the ALJ's finding that Claimant's claim to suffer from disabling memory problems lacks supporting medical evidence.

Regarding fatigue, the ALJ summarized Claimant's treatment for heart troubles. In July 2012, after an Emergency Room visit for shoulder pain, Claimant was diagnosed with obesity, hypertensive heart disease, and hypertrophic cardiomyopathy, a disease of the heart muscle that makes it harder for the heart to

---

[5] While Claimant has no records from treating mental healthcare providers, on September 14, 2015, cardiologist Dr. Patel noted, "Memory: normal, present and overall intact immediate, recent, and remote." AR 1121.

pump blood. AR 299, 305. He reported intermittent shortness of breath over the past year. AR 304.

In January 2013, Claimant had a pacemaker installed by Dr. Patel. AR 619, 725, 1042. On February 27, 2013, Dr. Patel medically cleared Claimant to return to work with the only restriction being "no heavy lifting for the next six months." AR 756.

In April 2013, a chest CT angiogram revealed left ventricle hypertrophy (i.e., enlargement) and other circulatory system abnormalities. AR 416.

In July 2013, Dr. Alleyne performed an internal medicine consultation, including an echocardiogram ("EKG"). AR 619. Claimant complained of "shortness of breath on exertion and easy fatigability." Id. Dr. Alleyne observed that Claimant's gait and balance were "normal" and opined that Claimant did "not require the use of an assistive device for ambulation." AR 620. Dr. Alleyne also opined that Claimant could "walk and stand four hours out of an eight-hour day." AR 622.

In October 2013, Dr. Patel again cleared Claimant to return to work. AR 771. In December 2013, Dr. Patel cleared Claimant to return to work with "no restrictions." AR 774. Claimant, in fact, tried to return to work, but could not because his job had been given to someone else. AR 46.

In March 2014, Dr. Karamlou conducted a second internal medicine consultation. AR 725. He recorded Claimant's medical history. Id. He noted that Claimant now used a cane for long-distance ambulation. AR 726. Like Dr. Alleyne, Dr. Karamlou opined that Claimant could walk and stand for four hours out of an eight-hour workday.[6] AR 728.

In August 2014, Claimant experienced an episode of low blood pressure and

---

[6] Two state agency reviewing physicians also opined that Claimant could walk and/or stand for four hours each workday. AR 67, 96.

9

atrial fibrillation. AR 781. Dr. Patel assessed him as having suffered a "Non-ST myocardial infarction." AR 781.

On July 31, 2015, Claimant saw his primary care doctors for a follow-up visit. AR 730. At that time, he reported "that health is generally good. Patient denies fatigue …." Id. Claimant indicated that he would see "cardiologist Dr. Patel for pacemaker maintenance." Id.

On September 7, 2015, Claimant went to the ER complaining of "weakness" and a possible seizure that morning. AR 994-95, 998. He was referred for testing and underwent another EKG on September 16, 2015, that revealed "severe LV [left ventricle] diastolic dysfunction." AR 736. He also had a "normal" carotid ultrasound. Id.

While this evidence demonstrates that Claimant had a serious heart condition likely to cause some fatigue and shortness of breath, the four doctors who considered how Claimant's heart condition affected his functionality all opined that he could walk and/or stand for four hours out of an eight-hour workday. See AR 622, 728, 67, 96. In the JS, Plaintiff does not point to any medical evidence refuting these opinions. Even Claimant's own testimony does not consistently refute these medical opinions. Claimant admitted that he could walk "about half a mile" before needing to sit. AR 53. Claimant reported that after walking half a block, he only needed to rest "2-5 minutes before [he] resume[d] walking." AR 252. Claimant's RFC would permit him to spend as much time resting while seated as walking or standing. AR 20. Thus, substantial evidence supports the ALJ's finding that Claimant's assertion that he fatigues too easily to work fulltime at the exertional level described in the RFC lacks support from the medical evidence of record.

**2. Reason Two: Unemployment Compensation.**

The ALJ found, "The Claimant testified he received unemployment compensation. He would have had to certify that he was physically and mentally

able, willing and available to work in order to be eligible for unemployment compensation. This is inconsistent with a claim for disability." AR 22. Plaintiff does not argue that this finding was erroneous – only unsupported. Plaintiff argues that the record is insufficient to show "the circumstances surrounding [Claimant's] receipt of unemployment benefits," such that the ALJ's finding of an inconsistency is unsupported. (JS at 20-21.)

In <u>Copeland v. Bowen</u>, 861 F.2d 536, 542 (9th Cir. 1988), the Ninth Circuit affirmed the ALJ's discrediting the claimant's subjective pain testimony for reasons including "the fact that he left work because he was laid off (although allegedly because of medical reasons) [and] received unemployment insurance benefits thereafter (apparently considering himself capable of work and holding himself out as available for work)."

Citing <u>Copeland</u>, the Ninth Circuit confirmed twenty years later that "receipt of unemployment benefits can undermine claimant's alleged inability to work full-time." <u>Carmickle v. Comm'r of SSA</u>, 533 F.3d 1155, 1161-62 (9th Cir. 2008). The record in that case, however, did not establish whether the claimant "held himself out as available for full-time or part-time work," and "[o]nly the former is inconsistent with his disability allegations." <u>Id.</u> The Ninth Circuit found that "the ALJ's credibility finding [based on Carmickle's receipt of unemployment benefits was] not supported by substantial evidence," because there was no evidence of what representations the claimant had made to obtain unemployment benefits. <u>Id.</u> There was evidence that the claimant was attending college full-time, suggesting that he might have certified himself to be available only for part-time work. <u>Id.</u> at 1160. Because the ALJ had cited other reasons supported by substantial evidence, the Ninth Circuit went on to hold that "the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above." <u>Id.</u> at 1163.

In <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1165 (9th Cir. 2014), the Ninth Circuit considered an ALJ's decision to discount subjective symptom testimony "because

11

[the claimant] received unemployment benefits after the alleged onset date of his disability." Citing Copeland, the court found that "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." Id. The court, however, pointed out that "Ghanim actually declined unemployment benefits within about a month of his onset date; rather than undercut his claim of disability, this prompt refusal of unemployment benefits supports it." Id.

Effective January 1, 2002 (i.e., between the Ninth Circuit's decisions in Copeland and Carmickle), the California Legislature enacted a statute that makes persons only available for part-time work eligible for unemployment benefits under some limited circumstances:

> An unemployed individual shall not be disqualified for eligibility for unemployment compensation benefits solely on the basis that he or she is only available for part-time work. If an individual restricts his or her availability to part-time work, he or she may be considered to be able to work and available for work pursuant to subdivision (c) of Section 1253 if it is determined that all of following conditions exist:
> 
> (a) The claim is based on the part-time employment.
> 
> (b) The claimant is actively seeking and is willing to accept work under essentially the same conditions as existed while the wage credits were accrued.
> 
> (c) The claimant imposes no other restrictions and is in a labor market in which a reasonable demand exists for the part-time services he or she offers.

Cal. Unemp. Ins. Code § 1253.8.

On April 6, 2018, the Court requested supplemental briefing concerning (1) what evidence (if any) shows that Claimant would have been eligible for the unemployment benefits he received if he had certified himself available for only

12

part-time work, and (2) who bears the burden of obtaining such evidence. (Dkt. 23.) Plaintiff declined to file a supplemental brief, but Defendant did. (Dkt. 24.)

Defendant argues that "Carmickle did not overrule Copeland," because only an en banc panel of the Ninth Circuit can overrule earlier precedent. Dkt. 24 at 3. Defendant concludes that therefore, "the ALJ was entitled to consider [Claimant's] receipt of unemployment benefits, regardless of whether he certified himself to be available for full-time work …." Id. Defendant points to one unpublished, post-Carmickle Ninth Circuit decision affirming receipt of unemployment benefits as a clear and convincing reason to discount subjective symptom testimony – without any discussion of whether the claimant represented him/herself as available for full-time or part-time work. Id. at 5, citing Hasso v. Colvin, 617 F. App'x 780, 781 (9th Cir. 2015) (ALJ properly found claimant not credible based on several reasons, including "her receipt of unemployment benefits."). Defendant also points to other recent, unpublished decisions which upheld an ALJ's considering a claimant's ability to work part-time as inconsistent with a claim of disability. Id. at 4, citing Richardson v. Comm'r of SSA, 588 F. App'x 531, 533 (9th Cir. 2014) ("Richardson's [application for] work part-time after applying for benefits … lend[s] further support to the ALJ's [adverse credibility] determination" as an inconsistency between his testimony and conduct) and Carter v. Astrue, 472 F. App'x 550, 552 (9th Cir. 2012) ("Fifth, the ALJ concluded that Carter's credibility was undermined by the fact that he worked part-time for nearly another year after his alleged disability onset date ….").[7]

The Court agrees that Carmickle did not overrule Copeland. Rather,

---

[7] Claimant testified that he tried to go back to his former fulltime job in December 2013, but he was unable to do so because his "job was given to somebody else." AR 46. While this testimony might have provided a clear and convincing reason to discount his subjective symptom testimony, the ALJ did not cite it in her decision.

13

California law changed between the two decisions, such that what was true when Copeland was decided (i.e., receipt of unemployment benefits *necessarily* meant the claimant had made representations inconsistent with seeking DIB or SSI) was no longer true when Carmickle was decided.

In Burke v. Colvin, 649 F. App'x 495, 496 (9th Cir. 2016), citing Carmickle, the Ninth Circuit held that the "ALJ erred in concluding that Burke's application for and receipt of unemployment benefits undermines her credibility where the record does not establish whether Burke held herself 'out as available for full-time or part-time work.'" The Ninth Circuit indicated that the ALJ had "failed to fulfill his duty to fully and fairly develop the record because the ALJ failed to ask Burke questions regarding her receipt of unemployment benefits …." Id. While the ALJ in Burke had a heightened duty because Burke was unrepresented, the combined lesson of Carmikle and Burke is that where records show a claimant received unemployment compensation, the ALJ must ask the claimant whether he/she claimed availability for part-time or full-time work before relying on receipt of unemployment compensation as an inconsistency that undermines the claimant's subjective symptom testimony. Here, the ALJ only asked Claimant to confirm that he received unemployment benefits "for six months, until June of 2014." AR 47.

That said, claimants bear the burden of proving entitlement to benefits. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965); see also 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you [claimant] have to prove to us that you are blind or disabled... This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"). This Court can imagine a rule where a represented claimant, upon seeing that the ALJ has relied on receipt of unemployment compensation to discount subjective symptom testimony, must either present to the Appeals Council evidence that he/she only claimed availability for part-time work or waive any challenge to the ALJ's finding of inconsistency. Such a rule would be consistent with the facts that

14

(1) claimants should know what representations they made to obtain unemployment compensation, (2) claimants can easily submit declarations providing that information, and (3) qualifying for unemployment compensation based on availability for only part-time work is atypical. The Court notes, however, that the unique facts of this case do not support such a waiver, because Claimant passed away *before* the ALJ's unfavorable decision, and it is unclear what knowledge Plaintiff had concerning Claimant's applications for unemployment benefits.

Thus, under the unique facts of this case, the Court finds that the ALJ's finding of inconsistency based on Claimant's receipt of unemployment benefits is not supported by substantial evidence, because there is no evidence in the record as to whether Claimant held himself out as available for full-time or part-time work.

### 3. Reason Three: Activities of Daily Living.

ALJs may consider contradictions between a claimant's reported limitations and a claimant's daily activities when assessing subjective symptom testimony. Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child" were inconsistent with disabling mental impairment); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (claimant's ability to perform "various household chores such as cooking, doing the dishes, going to the store, visiting relatives, and driving" inconsistent with claimed inability to do light work).

The mere fact that a claimant can carry on some daily activities, however, does not defeat a claim of disability. Verigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (claimant's ability to "go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, and read" was not inconsistent with pain testimony where "these physical activities did not consume a substantial part of [her] day"). Moreover, a

claimant may engage in activities like walking and swimming "*despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." Id. Thus, the relevant issue becomes whether the claimant's activities (1) contradict his testimony, or (2) "meet the threshold for transferable works skills." Orn v. Astrue, 495 F.3d 625, 639 (2007); Derr v. Colvin, 2014 WL 5080437, at *12 (D. Ariz. Oct. 9, 2014) ("Only when a level of activity is inconsistent with a claimant's claims of limitations should those activities have any bearing on the claimant's credibility.").

Here, the ALJ summarized Claimant's level of daily activity as follows:

> Despite the alleged impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including watching television, reading, writing letters, and if he takes his time there is nothing he needs help with. In a function report, he acknowledged he puts ice in the soda machine, mops the floor, does the shopping, drives, exercises, visits with friends and family, handles his personal care, handles his finances, plays board games, goes to church, and can follow instructions accurately. [(AR 227-30, AR 247-59.)] He told [consultative psychiatrist Dr. Rathana-Nakintara] he has adequate self-care skills of dressing, bathing, easting, toileting, and safety precautions, he watches television and reads, manages his own money, and he gets along with family. [(AR 719-21.)]
>
> These activities reflect a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments.

AR 21.

First, Plaintiff points out that the ALJ took some of Claimant's reported

activities "out of context;" when Claimant said that he "puts ice in the soda machine" and "mops the floor," he was describing his typical activities when working at the convenience store, not describing his activities after his alleged disability onset date. (JS at 9, citing AR 227.) Defendant agrees, but argues that this was harmless error because the ALJ "accurately described and considered [Claimant]'s other reports of his activities of daily living." (JS at 17 n.9.)

Second, Plaintiff argues that Claimant's "level of activity does not raise [sic] to the level of full time activity at any level of exertion." (JS at 10.) Defendant counters that Claimant's "testimony on daily activities was certainly at odds with his claims that he was unable to work because of his 'bad memory,' difficulty with staying focused for a long period of time, and because he tires 'too quickly.'" (JS at 17, citing AR 4.)

The evidence regarding some of the activities cited by the ALJ includes the following:

• <u>Shopping and driving</u>: In May 2013, Claimant reported that he went grocery shopping twice a month. AR 229. He drove, but only to medical appointments or the grocery store. Id. In November 2013, he reported that he no longer drove because his "family is afraid that it is not safe" due to his pacemaker. AR 250. He also reported that his wife did "all the shopping for the home." Id. In that same report, however, he stated that he would "walk around the grocery stores." AR 251. In February 2014, he told Dr. Rathana-Nakintara that he does not drive and "he does not do household chores, errands, shopping, or cooking." AR 720-21.

• <u>Exercising</u>: Claimant reported, "I try to … do a little exercise to strengthen my body." AR 247. He also said, "Every day, I try to exercise daily, no matter how little." AR 250. It is unclear if Claimant was referring to walking or some other form of exercise. Claimant identified walking as a hobby. AR 251. Regarding walking, Claimant stated, "I walk approx. ¼ mile in 20 minutes. I am

quite tired when I am done and it usually takes up to 1½ hours to recover from that walk." AR 227. He also reported that he could walk ½ block and rest 2-3 minutes before resuming. AR 252. He took walks "at least every other day." AR 259. At the hearing, Claimant testified that he could walk for "about half a mile" without stopping to rest. AR 53.

    • <u>Visiting with friends and family</u>: Claimant reported, "sometimes I get visitors and would take time to visit with them." AR 247; <u>see also</u> AR 251 ("I talk with friends and family when they come to visit, and I can play some board games."). He talked with friends using the phone and computer. AR 243. He told Dr. Rathana-Nakintara that he lived with his wife and five children ranging in age from 18 to 24 and that they were all "getting along well." AR 720.

    • <u>Writing letters</u>: Claimant testified, "I'm trying to write letters, because I lost my writing ability so I'm trying to write to my daughter.[8] I'm trying to write to somebody, to practice my writing ability because that is slowly coming back." AR 53. No medical source noted any difficulty with Claimant's speech or writing.

    • <u>Reading</u>: Claimant reported, "I read my Bible," and "I try to read a book." AR 247. He said, "It takes more effort to keep my concentration in reading books," but that he was "spending must more time reading and watching TV since I'm stuck at home and not working." AR 251. He also reported, however, that he did not have difficulty sustaining reading. AR 258. His wife observed that he did a lot of reading, including "computer reading." AR 243, 245.

    • <u>Going to church</u>: Claimant's wife reported that Claimant went to church every week where he engaged in "singing, listening to the sermon, [and] worship[ing]." AR 243. Claimant could maintain his church activities without reminders. AR 251.

    Substantial evidence supports the ALJ's findings that these daily activities

---

[8] His oldest daughter was married and living on her own. AR 720.

are inconsistent with Claimant suffering from mental impairments (i.e., short-term memory problems and poor concentration) so limiting that he could not do his past relevant work as a cashier. Activities such as handling money, occasional driving, reading, writing letters, playing board games, socializing, and participating at church all require short-term memory skills comparable to working as a cashier. Claimant admitted that he could following written instructions accurately, and there is no reason to think that he could not write a "checklist" of his duties each shift to help him remember them, if necessary. AR 228 (listing job duties), AR 252.

As for Claimant's exertional abilities, Claimant's subjective symptom testimony did not conflict with the ability to lift and/or carry ten pounds frequently, twenty pounds occasionally, sit for six hours out of an eight-hour workday with the ability to stand and stretch during normal breaks and lunch, or stand and/or walk for four hours out of an eight-hour workday with the use of a cane for prolonged walking for over thirty minutes at a time. Plaintiff has not cited to anything in the record reflecting such testimony. To the extent Claimant's vague testimony about getting fatigued quickly conflicts with the RFC, the daily activities described above are consistent with the RFC and therefore are a clear and convincing reason to discount this testimony.

## VI.
## CONCLUSION

In sum, the ALJ's reason (2) is not supported by substantial evidence, but reasons (1) and (3) are. Therefore, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: June 11, 2018

_Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge

19